## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RODNEY D. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:10-cv-00043** |
| | ) | **Judge Nixon** |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Brown** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Plaintiff Rodney D. Johnson's Motion for Judgment on the Record ("Motion") (Doc. No. 20), filed with a Brief in Support (Doc. No. 21). Defendant Commissioner of Social Security filed a Response in Opposition. (Doc. No. 25.) Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be denied and the final decision of the Commissioner be affirmed. (Doc. No. 26.) Plaintiff filed Objections to the Report. (Doc. No. 27.) Upon review of the record, the Court **ADOPTS** the Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

## I. BACKGROUND

### A. Factual Background

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report (Doc. No. 26 at 3-14).

1

*B. Procedural Background*

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on August 9, 2000, and Social Security Income ("SSI") on August 1, 2000. (Tr. 227.) Plaintiff's application was denied upon initial review, and again upon reconsideration. (Tr. 227.) Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") was granted, and the hearing took place on March 6, 2002. (Tr. 534-68.) The ALJ denied Plaintiff's claim on April 25, 2002. (Tr. 238.) Plaintiff requested review on July 8, 2002 (Tr. 238) and the Appeals Council remanded the case to the ALJ because Plaintiff's record could not be located (Tr. 240-42). A second hearing was held on January 9, 2006. (Tr. 569-98.) The ALJ again issued an unfavorable decision on May 22, 2006. (Tr. 14-24.)

Upon the Commissioner's request, the District Court for the Middle District of Tennessee remanded Plaintiff's case to the Appeals Council, which vacated the decision and remanded the case to an ALJ. (Tr. 614-17, 622.) A video hearing was held on July 8, 2009, and the ALJ also heard Plaintiff's supplemental SSI case filed on May 23, 2006. (Tr. 722-57.) The ALJ denied Plaintiff's claim on February 25, 2010. (Tr. 599-613.) The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2004.

2. The claimant has not engaged in substantial gainful activity since May 30, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following combination of impairments: carpal tunnel syndrome, degenerative disc disease, diabetes with neuropathy, asthma, dyspnea, chest pain, elevated cholesterol, high blood pressure, gastroesophageal reflux disease, irritable bowel syndrome, knee pain, migraine headaches, anxiety, and depression (20 CFR 416.920(c)).

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d)).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he would require a sit/stand option; he cannot do a job that involves dealing with the public; he is limited to following simple one and two step instructions; he can only occasionally push or pull arm or leg controls; he can only occasionally bend or stoop; he cannot crawl or climb; and he cannot work at unprotected heights or around hazardous machinery.

6. The claimant is able to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 16, 1974 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2000 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 604-612.)

On May 5, 2010, Plaintiff filed this action to obtain judicial review of the

Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) On October 20,

2010, Plaintiff filed a Motion for Judgment on the Record (Doc. No. 20), to which Defendant

responded on November 24, 2010 (Doc. No 25). On February 17, 2011, Magistrate Judge

Brown issued the Report recommending that the Commissioner's decision be affirmed and that

Plaintiff's Motion be denied.  (Doc. No. 26.)  Plaintiff asserted three objections to the Magistrate

Judge's findings on March 3, 2011, specifically:

1. Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper
   weight to the opinion of Plaintiff's treating physicians, Dr. Hoskote Nagaraj and Dr.
   Abhay Kemkar, and consulting physician Dr. Melvin Blevins.

2. Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper
   weight to the opinions of Plaintiff's treating psychologists.

 (Doc. No. 27.)  Defendant has not filed a response to the objections.  The Court discusses the

merits of Plaintiff's objections below.

## II.  STANDARD OF REVIEW

The Court's review of the Report is *de novo*.  28 U.S.C. § 636(b).  This review, however,

is limited to "a determination of whether substantial evidence exists in the record to support the

[Commissioner's] decision and to a review for any legal errors."  *Landsaw v. Sec'y of Health &

Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Title II of the Social Security Act provides

that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Accordingly, the reviewing

court will uphold the ALJ's decision if it is supported by substantial evidence.  *Garner v.

Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Substantial evidence is a term of art and is defined

as "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v.

NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla of evidence, but less than a

preponderance."  *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol.

Edison*, 305 U.S. at 229).

4

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

A. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper weight to the opinion of Plaintiff's treating physicians, Dr. Hoskote Nagaraj and Dr. Abhay Kemkar, and consulting physician, Dr. Melvin Blevins.*

In denying Plaintiff's claim for benefits, the ALJ found that Plaintiff could perform light work with some restrictions. (Tr. 606.) The ALJ adopted the analysis contained in the prior ALJ decision dated May 22, 2006, and incorporated it by reference. (*Id.*) In that decision, the ALJ discounted the more restrictive opinion of Dr. Hoskote Nagaraj, finding:

> While Dr. [Nagaraj]'s[1] residual functional capacity assessment limited the claimant to less than sedentary exertion, the undersigned finds such restrictions to be excessive as they are not based on the objective medical evidence of record but rather reflect[] the subjective complaints of the claimant. It is noteworthy that the physician further opined that the claimant appeared to be in much more pain that [sic] what was indicated on the findings of the claimant's current MRI.

---
[1] The ALJ mistakenly referred to Dr. Nagaraj as "Dr. Hagara" throughout his opinion.

(Tr. 19.)  Magistrate Judge Brown's Report recommends that the ALJ properly evaluated Dr. Nagaraj's opinion because it was inconsistent with the MRI, because Dr. Nagaraj had a brief treating relationship with Plaintiff, and because Dr. Nagaraj's assessment itself was limited. (Doc. No. 26 at 17-18.)  Plaintiff now objects to Magistrate Judge Brown's recommendation, arguing that Dr. Nagaraj's opinion was not inconsistent with the evidence in the record.  (Doc. No. 27 at 2.)

A "treating source" is one who has provided the claimant with medical treatment or evaluation and who has had an ongoing treatment relationship with the claimant.  20 C.F.R. §§ 404.1502, 416.902.  Generally, the opinions of treating physicians are entitled to greater weight than the opinions of non-treating physicians.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  If the opinion of the treating physician as to the nature and severity of the claimant's conditions is supported by accepted clinical and laboratory diagnostic tests and is not inconsistent with other substantial evidence from the record, it will have controlling weight.  *Rogers*, 378 F.3d at 242.

In determining the weight of the treating physician's opinion, the ALJ must consider "a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."  *Id.*  When discounting the opinion of the treating physician, the ALJ must provide "good reasons" that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Id.* at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).  The less consistent an opinion is with the record, the less weight it will be given.  *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  Deciding what weight to give to

6

competing evidence, such as contradicting opinions by multiple treating physicians, is an administrative finding for which the final authority resides with the Commissioner. *See* 20 C.F.R. § 416.927(e); *Walker v. Sec'y Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).

The Court agrees with the Magistrate Judge that the ALJ did not err in discounting Dr. Nagaraj's functional capacity assessment. Dr. Nagaraj's assessment itself states that his findings were based on Plaintiff's own estimation of his pain and limitations,[2] and that it was inconsistent with objective medical evidence, specifically a recent MRI. (Tr. 221-222.) The ALJ found that Plaintiff's complaints about the intensity, duration and limiting effects of his symptoms are not fully credible (Tr. 609-610), further diminishing the value of Dr. Nagaraj's assessment. An ALJ's finding on the credibility of a claimant's complaints of pain is to be accorded great weight and deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing 42 U.S.C. § 423; 20 C.F.R. 404.1529(a)). Additionally, there is no dispute that Dr. Nagaraj only treated Plaintiff briefly, and only treated him once prior to completing the functional capacity assessment. Several of the factors that the ALJ was required to consider, therefore, weigh against giving significant weight to Dr. Nagaraj's opinion.

Plaintiff also objects to the Magistrate Judge's recommendation that the ALJ properly rejected Dr. Blevins' medical report, because the ALJ did not address it in his decision. (Doc. No. 27 at 3.) The Court again agrees with the Report. Dr. Blevins saw Plaintiff only once, for the purpose of completing the assessment. Dr. Blevins is not, therefore, a treating source under 20 C.F.R. § 404.1502, as he did not have an "ongoing treatment relationship" with Plaintiff. The

---

[2] Dr. Nagaraj's assessment indicates that he could not assess Plaintiff's ability to sit and relied on Plaintiff's statement of that ability (Tr. 221); states that although he indicated Plaintiff was incapable of even low stress jobs, this was "according to patient perception" (Tr. 222); and indicates that Plaintiff's impairments were not "reasonably consistent with the symptoms and functional limitations described in this evaluation" (*id.*).

7

ALJ was not required to give Dr. Blevins' opinion great weight or to explain the reasons for the weight that he determined to be appropriate. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); 20 C.F.R. §§ 404.1502, 404.1527.

Finally, Plaintiff objects that the ALJ failed to address the treatment records of Dr. Kemkar, who treated Plaintiff for six years and diagnosed him with various conditions. (Doc. No. 27 at 3.) It does not appear to the Court, however, that Dr. Kemkar opined as to Plaintiff's ability to work or the limitations that his medical issues may have on that ability. Substantial evidence exists in the record to support the ALJ's determination that Plaintiff can perform light work, and therefore the ALJ did not err in his treatment of Dr. Kemkar's exam notes to the extent they contradict that determination.

Plaintiff has been diagnosed with many physical conditions including carpal tunnel syndrome, spondylosis, diabetes, and asthma. The findings by various physicians as to Plaintiff's severe limitations appear to be primarily based on his back and arm pain; Plaintiff's asthma and diabetes are predominantly controlled. However, as the ALJ noted, throughout the year 2000, Plaintiff was given various medical tests on his back and abdomen that showed small issues but that were mostly in normal range, at the conclusion of which a neurosurgeon was unable to find a basis for additional medical treatment other than a referral to a pain clinic when Plaintiff asserted he was experiencing continued neck and back pain. Plaintiff was also referred to physical therapy but was discharged for lack of motivation and compliance with the recommended program. Plaintiff had several examinations in 2002 with Dr. Drake, his primary care doctor, in which Plaintiff showed a mild exacerbation of his asthma but was otherwise normal, other than his complaints of pain. Plaintiff visited the hospital at various times from January 2003 to October 2005, but once again test results did not show any severe problems with

8

his back, shoulder, chest, or ribs. Plaintiff has also testified to the physical chores he does around his home, as well as work for his landlord and neighbors.

Essentially, there is little, if any, objective medical evidence to support very severe restrictions on Plaintiff's ability to work. Rather, the evidence consists primarily of Plaintiff's subjective complaints. After considering all of the evidence and evaluating Plaintiff's credibility at a hearing, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's subjective complaints about their intensity and limiting effects was not entirely credible. Again, the Court must give great deference to the ALJ's assessment of Plaintiff's credibility. *Walters*, 127 F.3d at 531. Discounting the credibility of a claimant is appropriate when the ALJ finds contradictions from medical reports, the claimant's other testimony, and other evidence. *Id.* Here, the ALJ explained in detail the evidence that led him to discount Plaintiff's credibility (Tr. 609-610), and the Court therefore defers to his assessment. Substantial evidence exists to support the ALJ's determination of Plaintiff's residual functional capacity, and the ALJ did not err in discounting any medical opinions that asserted more severe limitations.

   B. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper weight to the opinions of Plaintiff's treating psychologists.*

The ALJ determined that Plaintiff's treating psychologists' opinions should be given little weight because they were not consistent with the overall medical evidence in the record. (Tr. 610.) The ALJ explained:

> The treating psychologists noted in more than one treatment record that the claimant's affect was normal and that his mood was congruent with that normal affect, and nearly every treatment session noted an improvement or a positive outcome resulting from the claimant's psychotropic medications or his treatment. Furthermore, the claimant ascribed to multiple strange behaviors, which given the record as a whole, and the medico-legal context of presentation, is suspicious for

9

malingering. It is important to note that during the time period immediately subsequent to the time period relevant to this decision, the claimant's treating psychologists felt the claimant was malingering. Finally, it should be noted that the claimant's treating psychologists assigned the claimant a GAF score of 50[3] which is only one point lower than a score that would suggest moderate symptoms. The medical evidence of record, however, does not support a finding that the claimant's symptoms are serious but rather that they are moderate in severity.

(Tr. 610-611.) Plaintiff avers that his treating psychologists consistently reported that his mental impairments were severe enough to prevent work, and that the ALJ erred in failing to credit these reports. (Doc. No. 27 at 4.) Plaintiff does not elaborate, other than referring to the low GAF scores. The Magistrate Judge found that the ALJ adequately evaluated the evidence and had substantial evidence to support his assessment of Plaintiff's mental residual functional capacity. (Doc. No. 26 at 21.)

The Court finds that the evidence discussed by the ALJ, in addition to the evidence previously discussed regarding the severity of Plaintiff's physical conditions and his credibility, adequately supports the ALJ's finding that the treating psychologists' records were not consistent with the medical record and were therefore not entitled to great weight. The ALJ thoroughly addressed the criteria for mental impairments required by the Social Security regulations under 20 C.F.R. § 404.1520a to find that Plaintiff's mental impairments do not meet or medically equal a listed impairment. (Tr. 605-606.) Although Plaintiff emphasizes his GAF scores of 50, a GAF score is a physician's subjective evaluation rather than raw medical data, and is not, therefore, dispositive of anything in and of itself, but only one of several factors considered in assessing mental functional capacity. *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir.

---

[3] The Global Assessment of Functioning test is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. A GAF score between 41 and 50 represents serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF score between 51 and 60 indicates the existence of moderate difficulty in social or occupational functioning. *See* Diagnostic and Statistical Manual of Mental Disorders, 43 (4th ed. 2000).

10

2011); *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). Here, there is substantial evidence in the record to discount Plaintiff's GAF scores as an indication of severe mental limitations, especially as a score of 50 is on the border between the ranges for severe and moderate limitations. The Court therefore agrees with the Magistrate Judge's recommended finding that the ALJ properly evaluated Plaintiff's mental residual functional capacity.

**IV. CONCLUSION**

For the reasons stated above, the Court **ADOPTS** the Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner. This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**.

It is so ORDERED.

Entered this the __23rd__ day of September, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

11